UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHILIP MOORE, et al.,

        Plaintiffs,

    v.

CITY OF KIRKLAND, et al.,

        Defendants.

CASE NO. C05-2062JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on a motion for summary judgment from Defendants the City of Kirkland (the "City"), Tom Radford, and Ken Carlson (Dkt. # 18) and a motion to amend from Plaintiffs Philip Moore and Michelle Hurteau (Dkt. # 22). No party has requested oral argument, and the court finds these motions appropriate for disposition based on the parties' briefs and supporting materials. For the reasons stated below, the court GRANTS Defendants' summary judgment motion, DENIES Plaintiffs' motion to amend as moot, and REMANDS this action to King County Superior Court.

## II. BACKGROUND

Mr. Moore and Ms. Hurteau are the joint owners of a condominium unit in the Watershed Park condominium complex in Kirkland, Washington. In November 2002, a City water main burst and flooded Plaintiffs' unit. The City conceded responsibility for

ORDER – 1

the flood, and the parties began the process of remedying the damage. Plaintiffs were not satisfied with the City's conduct. In 2004, they sued the City in King County Superior Court on state law claims. In December 2005, Plaintiffs amended their complaint to state a claim under 42 U.S.C. § 1983, adding Mr. Radford and Mr. Carlson as Defendants. Defendants then removed the action, properly invoking this court's subject matter jurisdiction over the § 1983 claim and its supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1441(c).

The instant motions relate solely to Plaintiffs' § 1983 claims, which arise from Plaintiffs' initial efforts to obtain a building permit from the City's building division for remodeling their unit in the aftermath of the flood. Taking the evidence in the light most favorable to Plaintiffs, they applied for the permit in late February 2003.[1] Mr. Radford, a Senior Code Specialist at the building division, informed them that, pursuant to City policy, he needed the approval of their condominium homeowners' association ("HOA") before he could process their permit application. Mr. Carlson, who was at all relevant times the official in charge of the building division, is aware of this policy and requires the building division to enforce it. Although Plaintiffs obtained at least a partial approval for their proposed remodeling work from HOA president Larry Fischer in February 2003, Mr. Radford found the approval did not cover all of the work proposed in the permit application. He demanded an approval commensurate with the scope of the remodeling work proposed in the building permit. Not until October 2003 did Plaintiffs provide an HOA approval that satisfied him.

---

[1] Although Plaintiffs repeatedly assert in their briefing that they applied for a permit on February 27, 2003, there is no evidence that they did so until April 2003. At best, the evidence shows that a contractor that the City's insurance adjuster had recommended for Plaintiff's remodeling project was aware of their desire to obtain a permit in February 2003. Because the date is unimportant to the court's later analysis, the court adopts Plaintiffs' assertion for purposes of resolving the pending motions.

ORDER – 2

Defendants seek summary judgment disposing of Plaintiffs' § 1983 claim, and request that the court remand this action to state court for disposition of the state law claims. Plaintiffs have filed a motion to amend their complaint in an effort to elaborate upon their § 1983 claim.

### III.  ANALYSIS

On a motion for summary judgment, the court is constrained to draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

Section 1983 creates a remedy against a person acting under color of law who subjects a plaintiff to a deprivation of rights secured by the Constitution or other laws. In order to make a prima facie case of a § 1983 violation, therefore, a plaintiff must show, among other things, that he has been deprived of rights secured by the Constitution or federal statutes. Azer v. Connell, 306 F.3d 930, 935 (9th Cir. 2002).

Plaintiffs base their § 1983 claim on the allegation that Defendants' "delegation of authority" to the HOA violated the due process clause of the Fourteenth Amendment.

ORDER – 3

Pls.' Opp'n at 2. According to Plaintiffs, their "narrow and identifiable" § 1983 claim seeks damages for the "period during which the City of Kirkland refused to begin to process their building permit until it was satisfied with the detail of the permission from the [HOA]." Pls.' Opp'n at 6. Plaintiffs concede that they have no ripe claims arising from Defendants' conduct after the HOA's October 2003 approval. Id. at 6 n.1.

The court now examines the record to determine if Plaintiffs can prove a due process violation.

**A.   A Government Can Delegate Authority to Private Actors Without Offending the Due Process Clause.**

Plaintiffs hitch their due process wagon to Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116 (1928). In Roberge, the Court considered a Seattle zoning ordinance that permitted the construction of a home for the elderly poor in a particular district only upon the written consent of the owners of two-thirds of the property within 400 feet of the proposed building site. Id. at 118. The Court struck down the ordinance, finding that its "delegation of power" to private property owners was "repugnant to the due process clause of the Fourteenth Amendment." Id. at 122. In Plaintiffs' view, when the City and its building division gave the HOA responsibility for approving Plaintiffs' permit application before processing it, they engaged in the same delegation of power found "repugnant" in Roberge.

Although Plaintiffs seem to argue otherwise, Roberge does not erect an absolute bar on the delegation of government power to private individuals or entities. Tucson Woman's Clinic ("TWC") v. Eden, 379 F.3d 531, 555 (9th Cir. 2004) (citing Roberge for the proposition that "delegated authority must satisfy the requirements of due process"). The constitutional violation in Roberge was not the delegation of power to private individuals per se, but rather the delegation of such power in a manner that violated due

ORDER – 4

process. The Roberge Court noted that the challenged ordinance itself demonstrated that the city had no objection to the construction of the home. Id. at 121 ("The grant of permission for such building and use . . . shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and within the general scope and plan of the zoning ordinance."). Despite the city's approval, the ordinance made the construction subject to private approval "uncontrolled by any standard or rule prescribed by legislative action . . . ." Id. at 121-22. The ordinance made "no provision for review," and left the city and the plaintiff "bound by the decision or inaction" of the property owners. Id. at 122. The property owners were "free to withhold consent for selfish reasons or arbitrarily," and made the plaintiffs subject to their "will or caprice." Id.

In contrast to the untrammeled and unreviewable discretion awarded to property owners in Roberge, courts uphold delegations of power to private actors so long as the delegated power comports with due process. In TWC, for example, the Ninth Circuit considered an Arizona regulatory scheme barring abortions unless "a physician with admitting privileges at a hospital in Arizona" is present until the abortion patient is "stable and ready to leave the recovery room." 379 F.3d at 555. Because Arizona law made private hospitals responsible for determining if physicians received admitting privileges, the plaintiffs challenged the regulation "as an unconstitutional delegation of authority to private hospital boards." Id. The court upheld the regulatory scheme because Arizona law prevented hospitals from arbitrarily denying admitting privileges, id. at 555-56, and because plaintiffs had no evidence that any private hospital had denied admitting privileges "to physicians based on their status as abortion providers," id. at 556.

ORDER – 5

TWC illustrates the application of the Roberge bar on delegations of power that are "repugnant to due process," in light of the later speciation of the due process clause into procedural and substantive components.  A government actor denies due process when he "deprive[s] any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV.  Deprivations accomplished through a "denial of fundamental procedural fairness" implicate procedural due process.  County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  Some deprivations, however, are unconstitutional "regardless of the fairness of the procedures used to implement them," and thus implicate substantive due process.  Daniels v. Williams, 474 U.S. 327, 331 (1986) (discussing origins of due process clause); see also Lewis, 523 U.S. at 846 (noting that substantive due process bars "exercise[s] of power without any reasonable justification in the service of a legitimate governmental objective").  In TWC, the delegation of power comported with substantive due process because there was no evidence that hospitals denied admitting privileges to any physician because he or she provided abortions.  379 F.3d at 556.  The delegation of power complied with procedural due process because it provided standards for hospitals' decision making, and provided for judicial review of their decisions.  Id. at 555-56.

With TWC and Roberge in mind, the court concludes that City's delegation of power to condominium associations comports with due process.

**B.     The Delegation of Power to the HOA Comports with Substantive Due Process.**

To prove a substantive due process violation, Plaintiffs would have to show that the City's HOA approval policy lacks "any reasonable justification in the service of a legitimate governmental objective." Lewis, 523 U.S. at 846.  In Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 198 (2003), the Supreme Court recognized that only an "egregious or arbitrary" refusal to issue a building permit violates substantive

ORDER – 6

due process. The court holds that the Defendants' conduct was neither egregious nor arbitrary as a matter of law.

First, the City's HOA approval policy is, on its face, "eminently rational." Cuyahoga Falls, 538 U.S. at 199. Under the Kirkland Municipal Code ("KMC"), only an an "owner" or an "authorized agent" of the owner can apply for a building permit. KMC § 21.06.205. The Code also empowers the official in charge of the building division to "enforce the provisions" of the building code and to "render interpretations" and "adopt policies and procedures" that comply with the "intent and purpose" of the code. KMC § 21.06.135. Here, the unchallenged evidence is that the building division adopted its HOA approval policy[2] because, consistent with the City code, it does not grant permits to build on a property without the approval of the property owner or owners. Radford Decl. ¶ 6; Carlson Decl. ¶ 13. The City recognizes that a condominium unit owner has dominion over his or her unit, but the unit owners collectively own all common elements, including most exterior features. See, e.g., RCW § 64.32.040 (establishing ownership rights under Horizontal Property Regimes Act); RCW § 64.34.204 (differentiating between units and common elements under current Condominium Act). The condominium association has management authority over common elements. E.g., RCW § 64.32.250; RCW § 64.34.304.[3] For these reasons, the City requires the approval of the

---

[2] Plaintiffs repeatedly note that the HOA approval policy is unwritten, but cite no authority for the proposition that a written version of the policy is necessary, much less that the failure to reduce the policy to writing is a due process violation. They also present evidence that the City selectively enforces the policy. A selective enforcement claim falls under the Equal Protection Clause. See, e.g., Whren v. United States, 517 U.S. 806, 813 (1996). Plaintiffs have provided no authority in support of such a claim.

[3] The court does not purport to engage in a thorough analysis of the allocation of control between unit owners and a condominium association. Mr. Radford summarizes the law aptly when he states that the City's HOA approval policy is "based on the complex nature of condominium real property interests, wherein individual units often do not stand alone, and

ORDER – 7

condominium association before approving a building permit.  In contrast to the ordinance in Roberge, which allowed persons with no ownership interest in the plaintiff's property to block construction on the property, the City's policy ensures that property owners have the right to approve building permits *for their own property*.  The court holds that the policy is not a per se denial of substantive due process.

The court also finds no substantive due process violation in the application of the City's HOA approval policy to Plaintiffs.  Plaintiffs applied for a building permit that undisputedly would have altered exterior features of their condominium unit.  In response to the City's request for HOA approval, Ms. Hurteau sought approval from Mr. Fischer, who responded that the "HOA has given its approval for interior remodeling of [Plaintiffs' unit]."  Hurteau Decl., Ex. 4.  When Mr. Radford received this notice[4], he observed that the scope of the HOA's approval ("interior remodeling") was not as broad as the scope of the permit application, and communicated as much to Mr. Fischer.  Radford Decl. ¶ 10.  Although Plaintiffs attribute his conduct to the "lack of any rules or standards," Pls.' Opp'n at 9, the evidence shows otherwise.  Mr. Radford properly applied the only standard bearing on his decision:  he refused to accept a HOA approval that, on its face, did not extend to the exterior work that Plaintiffs proposed.

---

individual ownership interests cannot be easily separated from interests of the structure as a whole and other homeowners as a group."  Radford Decl. ¶ 6.

[4]It is not clear that Mr. Radford received this version of Mr. Fischer's notice.  The record reflects that he received a prior version of the notice, in which Mr. Fischer declared that the HOA had "given its approval for interior remodeling," but that "[n]o work is to be performed that impacts the exterior of the townhouse."  Radford Decl. ¶¶ 8-9.  When Ms. Hurteau received the earlier notice, she explained to Mr. Fischer that part of her permit application covered exterior work to an upstairs dormer.  Mr. Fischer responded with the revised notice on which the court relies.  Although there is no evidence from which the court could conclusively determine that Mr. Radford received the revised notice, the court assumes that he did, because that version of the notice is slightly more favorable to Plaintiffs.

ORDER – 8

The evidence also shows that Mr. Radford's concern was justified, because the HOA refused to sign off on the exterior work until they received more information from Plaintiffs. Mr. Radford's request for additional HOA approval led to a series of communications in which Mr. Fischer or the HOA determined that they did not have enough information to approve the exterior work. The record reflects that on May 5, 2003, Mr. Fischer sent an e-mail to Ms. Hurteau and her architect that the HOA needed a copy of Plaintiffs' agreement with their contractor and other information. Hurteau Decl., Ex. 8. On October 8, 2003, Mr. Fischer sent Mr. Radford the HOA's partial approval of the scope of Plaintiffs' permit application.[5] Hurteau Decl., Ex. 12. Among other things, the approval required additional information on a deck that was part of the work described in the application. According to Mr. Radford, Plaintiffs' architect supplied that information on October 20, 2003. Radford Decl. ¶ 12.

Plaintiffs present no evidence that materially contradicts this series of events, and therefore present no evidence that the City invoked its HOA approval policy in an egregious, arbitrary, or irrational manner. From the outset, the Plaintiffs' permit application raised issues regarding whether the HOA had approved work on exterior features of the building. That the City awaited the resolution of these issues before further processing Plaintiffs' permit application is not a substantive due process violation.

**C.   The City's Delegation of Power to the HOA Does Not Offend Procedural Due Process.**

The court turns next to Plaintiffs' procedural due process claim. Plaintiffs present no evidence or argument supporting a procedural challenge to the City's general process

---

[5]Although the record does not conclusively explain why the HOA did not grant approval until October 8, 2003, Mr. Fischer's e-mail on that date states that the HOA did not receive a "statement of work" from Plaintiffs' architect until October 3, and that the statement of work was "the first written information the [HOA] has received that stated what work the additional permit sought by Hurteau would cover." Hurteau Decl., Ex. 12.

ORDER – 9

for approving building permits. Instead, they contend that the City's delegation of authority to condominium associations is procedurally unfair.

The court concludes that the City's HOA approval policy passes muster under the procedural due process clause because, as was the case in TWC, state law provides sufficient standards for the HOA's decision, and also provides for judicial review. In contrast to the ordinance that the Court struck down in Roberge, the City's policy does not preclude review of the HOA's decision, or leave Plaintiffs defenseless against the "will or caprice" of the HOA. A unit owner who disagrees with the condominium association's refusal to approve a building permit retains the option to exhaust his remedies within the association, and then to sue the association. See, e.g., RCW § 64.34.090 (imposing duty of good faith on performance of all duties and obligations under the Condominium Act); RCW § 64.34.344 (permitting unit owners to sue condominium association in tort or contract); Schwarzmann v. Ass'n of Apartment Owners of Bridgehaven, 655 P.2d 1177, 1180 (Wash. Ct. App. 1982) (applying "business judgment rule" to decisions of condominium association under prior law). Like the delegation of authority upheld in TWC, state law provides Plaintiffs an opportunity to challenge arbitrary decisions of the HOA, and thus the City's HOA approval policy comports with procedural due process.

Practically speaking, of course, the City's policy may disappoint condominium unit owners. The condominium association may act slowly to approve a permit application (as the HOA allegedly did in this case), or they may withhold approval for arbitrary or improper reasons, forcing the unit owner to pursue the cumbersome process of state court review. These inconveniences, however, are not properly attributed to the City, but rather to the inherent compromise of condominium ownership. See Shorewood W. Condo. Ass'n v. Sadri, 992 P.2d 1008, 1011 (Wash. 2000) (noting that unit owners

ORDER – 10

"give up a certain degree of freedom of choice which [they] might otherwise enjoy in separate, privately owned property") (internal quotation and citation omitted).

**D.   The Court Need Not Decide Plaintiffs' Motion to Amend.**

Plaintiffs seek to amend their complaint to clarify their claim of a procedural due process violation. The court has considered their proposed amended complaint, and finds that nothing contained therein would affect the court's conclusion that Plaintiffs cannot establish a due process violation as a matter of law. For that reason, the court declines to reach the motion to amend, and DENIES it as moot.

### IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' summary judgment motion (Dkt. # 18) and DENIES Plaintiffs' motion to amend (Dkt. # 22) as moot. The court's resolution of these motions leaves no federal claims pending in this action. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." Here, Defendants, who chose the federal forum by removing this action, request that the court remand the remaining claims to state court. Plaintiffs state no objection to the request. The court therefore REMANDS this action to King County Superior Court, and directs the clerk to enter judgment consistent with this order.

DATED this 14th day of July, 2006.

_____
JAMES L. ROBART
United States District Judge

ORDER – 11